IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| IRENE KATRENSKY AND <br> JOHN S. KATRENSKY, SR., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> *   Civil Action No.:  3:09-cv-0030-CSC <br> * <br> * <br> * <br> * <br> * <br> * |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

On June 29, 2005, at approximately 7:00 a.m., Mrs. Irene Katrensky drove her husband, Mr. John S. Katrensky, Sr., to the U.S. Veteran's Hospital in Tuskegee, Alabama for an appointment to see a podiatrist.  They left their home in Eufaula around 5:00 a.m.  Mrs. Katrensky allowed extra time to get to the hospital because it was raining.  Though it had also been raining in Tuskegee, by the time they reached the hospital, the downpour had stopped and there was a mist in the air.  (Mrs. Katrensky Dep. 24:6-21; 25:13-19; 34:3-6; Mr. Katrensky Dep. 20:5-21:1; 22:7-8)

The Katrensky's parked in a side parking lot where there was sufficient handicapped parking.  At that time, Mrs. Katrensky was sixty-nine years of age, and the Katrensky's had been married for more than thirty years.  (Mrs. Katrensky Dep. 19:18-23; 41:12-14; Mr. Katrensky Dep. 10:1-2; 20:1-4)

They entered the building through the 'pharmacy entrance', which is located on the side of the hospital. The pharmacy entrance opens to an approximate sixty-foot hallway that leads to the pharmacy area. It is not the main entrance to the hospital. The Katrensky's normally used the pharmacy entrance due to the abundance of handicapped parking in that area and the relative short walk from the parking lot to the pharmacy entrance. There was no signage indicating limited entry, or that patients were not allowed to use that door. (Mrs. Katrensky Dep. 25:2-9; Mr. Katrensky Dep. 21:2-22:4; Simpson Dep. 58:18-59:10)

Once inside the building, the Katrensky's walked down the hallway to the pharmacy waiting area, where the couple sat and Mr. Katrensky took his medication. The floor in that area of the hospital was an off-white, commercial-type vinyl tile at that time. Among other medical issues, Mr. Katrensky has diabetes and a compromised immune system, necessitating frequent snacks and medication. Mrs. Katrensky kept bottled water in the car because Mr. Katrensky could not drink from a water fountain due to his immunological deficiencies. (Mrs. Katrensky Dep. 26:4-24; Mr. Katrensky Dep. 22:9-22; 25:10-19)

The Katrensky's sat in the pharmacy waiting area until approximately 8:00 a.m. At that time, Mrs. Katrensky headed back to the car to get a bottle of water for Mr. Katrensky. She walked out of the hospital the same way they came in -- the pharmacy entrance -- and proceeded to their car. Mrs. Katrensky was wearing casual, flat shoes, and did not have an umbrella or raincoat. (Mrs. Katrensky Dep. 26:4-12; 27:1-5; 37:20-39:8)

When she re-entered the building with the bottle of water, Mrs. Katrensky stepped

onto a mat just inside the door.  She remembers sliding her feet across the mat for the first two steps in an effort to dry her shoes.  On her third step inside the building, as she exited the matted area, Mrs. Katrensky slipped on a wet, slippery substance and fell to the floor.  The impact caused her to fracture her left wrist.   (Mrs. Katrensky Dep. 27:1-25; 28:1-9)

Mrs. Katrensky's gaze was focused on the hallway ahead of her at the time of the fall, and she did not see anything on the floor prior to her fall.  Her pants and shirt were wet down her left side, leading her to believe that the substance she slipped and fell in was rainwater.  There were no "caution", "wet floor", or other signs present in the area where Mrs. Katrensky fell, and there were no umbrella bags or other umbrella receptacle near the pharmacy entrance to the VA hospital to prevent an unusual accumulation of rain water.[1]  (Mrs. Katrensky Dep. 28:10-18; 32:17-25; 36:3-25; 37:1-6; 40:22-41:6; 41:22-25)

When Mrs. Katrensky fell, an unknown patient near the pharmacy came to her aid, along with a nurse, Bobby Welch, and a pharmacist, Dr. Holly Johnson.  Nurse Welch helped Mrs. Katrensky into a wheelchair and took her to the emergency room, known as the 'LSU'.  (Mrs. Katrensky Dep. 13:7-23; 33:3-11)

At the LSU, x-rays revealed that Mrs. Katrensky's wrist was fractured.  Dr. Babb, who was on duty in the LSU that day, told Mrs. Katrensky not to worry about the costs of her treatment, that the VA would take care of it.  After some time in the LSU, a VA

---

[1] Contrary to the Defendants' supposition in their supporting brief (Doc. 31, pg. 10 footnote), the wetness of Mrs. Katrensky's clothing was not caused by a leaking ice pack; Mrs. Katrensky clearly testified in deposition that she notice her clothing was wet after the fall and in any case upon entry into the emergency room, due to the colder ambient temperature of the emergency room/LSU.  The wetness of her clothing could not have been caused by a leaking ice pack, because the ice pack was not applied to her arm until she reached the emergency room.

employee, Shirley Tony, transported Mrs. Katrensky to Dr. Chung in Montgomery for further evaluation and treatment. (Mrs. Katrensky Dep. 34:24-25; 35:1-3)

Since the injury, Mrs. Katrensky can no longer grasp with her left hand. Although she attended physical therapy for three months following the injury in an effort to rehabilitate her wrist and hand, she has suffered permanent limitations on the use of her hand. She has accidentally scalded herself with hot water as she tried to pick up a pot from the stove with her left hand. She cannot grasp the safety bars in her shower, she cannot grasp a glass of water, and she cannot steer a car with her left hand. She cannot cut her hair or Mr. Katrensky's hair as she did before the injury, she has difficulty getting dressed at times, and she is unable to properly brush her dentures due to her inability to grasp with her left hand. Mrs. Katrensky is no longer able to sew, which was her favorite leisure activity. (Mrs. Katrensky Dep. 16:11-18; 22:23-25; 23:1-22; 52:15-53:12; 56:1-20; 57:23-58:4; 62:24-63:20; Mr. Katrensky Dep. 30:2-31:15; 32:1-22).

Mr. Katrensky suffered the loss of consortium of his wife due to her injury, and said loss was manifested in Mrs. Katrensky's diminished ability to help him get dressed, her inability to cut his hair, her inability during recovery to perform her normal housekeeping chores, her inability to properly apply medications to his back and legs, and her sleeplessness. In an effort to avoid exacerbating Mrs. Katrensky's pain and sleeplessness, the Katrensky's purchased single beds to replace the king size bed they shared before her injury. (Mr. Katrensky Dep. 30:14-19; 31:2-7; 32:3-18; 34:3-15)

The fact that it was raining on the morning of June 29, 2005 in Tuskegee, Alabama is undisputed. Because it was raining, the Defendants knew or should have known that a dangerous condition existed or was likely to exist at or near the entrances to

the VA hospital. Mrs. Katrensky suffered her broken wrist due to the VA hospital's failure to take adequate precautions to ensure that foreseeable plaintiffs were reasonably warned of a potentially dangerous condition or to ensure that any unreasonable accumulation of rainwater on the interior tile floor was removed in a timely manner.

## II.  APPLICABLE LAW

### A.  Summary Judgment Standard

Summary judgment should be rendered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is material only if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Whether a genuine issue of material fact is presented will be determined by asking if a reasonable jury could return a verdict for the non-moving party. Id. When evaluating a motion for summary judgment, the facts are to be construed in a light most favorable to the non-moving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The district court must not "resolve factual disputes by weighing conflicting evidence...since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F. 2d 647, 651 (5th Cir. 1962). A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's

favor.  Anderson, 477 U.S. at 255.

### B.  Applicable Substantive Law

The substantive law applicable in a negligence claim against the United States is the law of the state where the alleged negligent act or omission occurred.  Stone v. U.S., 373 F. 3d 1129, 1130 (11th Cir. 2004).   The alleged negligence in this case occurred in Tuskegee, Alabama.  Thus, Alabama substantive law is applicable to this case.

### C.  Negligence

#### 1.  Shopkeeper's Duty

Defendants concede that the Plaintiffs were invitees of the VA hospital. (Def.'s Brief, Doc. 31, pg. 6)

> A premises owner owes his invitees a duty to keep the premises in a reasonably safe condition and to warn them of any defects and dangers that are known to the landowner but are unknown or hidden to the invitee[s].  A premises owner, however, owes no duty to protect invitees from all conceivable dangers they might face while on the premises because [t]he owner of a premises...is not an insurer of the safety of his invitees...and the principle of res ipsa loquitur is not applicable.  There is no presumption of negligence which arises from the mere fact of an injury to an invitee.  Instead, [t]he entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries.  Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable.

Hale v. Kroger Ltd. Partnership I, 28 So.3d 772, 778-779 (Ala. Civ. App. 2009).

While a shopkeeper is not required to stand constant vigil with a mop or towel on rainy days, he must use due care to take measures intended to prevent accidents when there are 'unusual accumulations of rainwater.'  Boyd v. Wal-Mart Stores, Inc., 710 So.2d 1258, 1260 (Ala. Civ. App. 1997).  What constitutes an 'unusual' accumulation of water is a fact question that should be answered by the jury.  Id.  In the Boyd case, as here, Boyd presented substantial evidence to create a question whether there was an

unusual accumulation of rainwater on the floor.   Once an unusual accumulation of rainwater is established by substantial evidence, the Defendant must show that he exercised due care in taking measures to prevent accidents due to the unusual accumulation of rainwater.

### 2.  The VA Hospital Failed To Exercise Due Care

In this case, the Defendants took no measures to prevent Mrs. Katrensky's accident.  There were no warning signs posted, nor umbrella bags present, despite the downpour that drenched the VA hospital on June 29, 2005. The mat that was inside the door was the same size and type of mat that was normally present at that entrance.

At least an hour had passed while the Katrensky's were sitting in the pharmacy area of the VA hospital before Mrs. Katrensky went out to the car to get a bottle of water for her husband.  The Defendants' claim that Mrs. Katrensky had ample opportunity to inspect the area where she fell the first time she entered the hospital that morning irrelevant.   Alabama state courts have found that the passing of as little as 30 to 45 minutes without cleanup of an entrance during bad weather is sufficient to establish negligence on the part of the premises owner. See Neel-Gilley v. McCallister, 753 So.2d 531, 534 (Ala. Civ. App. 1999) (Although the McCallisters regularly inspected the floors, the evidence suggested that they had not inspected the floors for 30 to 45 minutes before the accident. Whether water had accumulated in the entrance to the business and whether it was there for a sufficient amount of time to impute notice to the McCallisters, or whether the McCallisters were delinquent in failing to discover its presence were questions to be decided by a jury.)

To date, despite policies and procedures having been in place to mandate an

accident report in circumstances such as Mrs. Katrensky's slip and fall inside the hospital, the Defendants have been unable to produce records demonstrating a report of any kind was ever made related to Mrs. Katrensky's injury, even though she was treated in their own emergency room for a fall that occurred on the premises.  A supervisory VA maintenance employee, Willie Simpson, testified that he did not consider Mrs. Katrensky's fall to be a serious incident, despite her broken arm.  He stated he did not prepare a report because no one asked him to do so. (Simpson Dep. 15:16-16:16; 17:15-18:8).

      Moreover, the Defendants' policies and procedures in effect at the time of the slip and fall required regular rounds by VA housekeeping aids to identify dangerous conditions.  The Defendants have failed to produce records demonstrating that this procedure was followed on the day of or within one year preceding Mrs. Katrensky's fall.  Also interesting is the Defendants inability to produce any record of any kind establishing who was working at the VA hospital on June 29, 2005.[2]

      In addition to the scarcity of maintenance and employee records, Mr. Simpson testified to a general lack of necessary equipment in the maintenance department.  Though he was reluctant to elaborate, Mr. Simpson, who is still employed by the VA in another department, stated that in 2005 he had trouble getting the necessary equipment to properly maintain the floors and "enhance the program as far as the general cleanliness, especially in [the] patient care areas."  Mr. Simpson admitted that the pharmacy entrance would probably not have been monitored by the maintenance department as often as the main entrance.  (Simpson Dep. 52:22-53:22; 59:11-15).

---

[2] This absence of evidence has been made known to the undersigned by the Defendants. The Defendants have assured the undersigned that a statement from the Defendants as to the unavailability of said evidence is forthcoming. Thus, a motion to compel has not been filed yet.

Mrs. Katrensky's testimony in deposition that there were no warning signs posted or other precautionary measures in place, other than the usual mat, to protect her from the unusual accumulation of rain water, constitutes substantial evidence that the Defendants failed to exercise due care to prevent her injury. It cannot be said that the evidence before this Court shows that the VA hospital was not negligent. On the contrary, the uncontroverted evidence is sufficient to require submission of this issue to a jury.

### D. Wantonness and Negligent Training and Supervision

Wantonness has been defined as:

> "the conscious doing of some act or the omission of some duty [while] under knowledge of existing conditions and while conscious that, from the doing of such act or the omission of such duty, injury will likely or probably result, and before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the result. .... In order to constitute wantonness, a failure to act must be accompanied by knowledge that someone is probably imperiled, and thus failure to act must be in reckless disregard of the consequences....

McDonald v. Lighami Development Co., L.L.C., 962 So.2d 847, 851 (Ala.Civ. 2006).

In this case, as stated above, the Defendants have failed to demonstrate that the VA hospital followed its own policies and procedures with respect to maintaining a safe environment for its patrons. There is no evidence that safety rounds or routine inspections were conducted by housekeeping aids or supervisor as prescribed by policy. (Exhibit 1 - Service Policy No. 137-03-15)

Furthermore, no report or investigation of Mrs. Katrensky's injury can be located by the Defendants, indicating that no report was ever made. The failure to make a report is contrary to specific VA Environmental Management Service policy number 137-004-01, in effect on June 29, 2005. The policy states, in part:

> Environmental Management will ensure every patient, visitor, and employee is provided an environment free of health hazards as related to activities and services furnished by EMS. ....  Environmental Management will strive to eliminate potential accidents and potential injuries within the servie and the facility by establishing an active service Safety Sub-Committee to define the responsibilities of Management and employees, provide training, monitor performance, provide protective garments, inspect areas, **investigate and follow-up on any accident (no matter how insignificant it my seem**), and evaluate performance.

(Exhibit 2 - Service Policy No. 137-04-01, Para. 4.b.3.(emphasis added)).  As noted above, the Defendants cannot even provide the names of employees who worked on June 29, 2005.

According to the policies set forth in the policy manual provided to the Plaintiffs in discovery, VA facilities maintenance employees were required to undergo specific training and refresher courses regarding maintaining a safe environment for the hospital's patrons.  The Plaintiffs contend that the employees' failure to comply with the VA's written policies and procedures set out for the stated purpose of maintaining a safe environment, despite training to the contrary, demonstrates a wanton disregard for the patrons, and establishes wanton conduct for which the Plaintiffs are entitled to relief.  The employees knew of the risk of injury to foreseeable plaintiffs, and their reckless disregard for their duties during rainy weather constitutes wantonness.  At a minimum, the Defendants actions, or failure to ensure compliance with policies and procedures amounted to negligent training and supervision.

### E.  Mr. Katrensky's Loss of Consortium Claim Remains Viable

As set forth above, Mrs. Katrensky's claims are viable because there are genuine issues of material fact that should be decided by a jury.  The VA hospital was negligent and wanton in its failure to provide a safe environment for its patrons.  Thus, Mr.

Katrensky's claim is not subject to disposal by summary judgment.

### III. REQUEST FOR LEAVE TO AMEND

As previously stated, the Defendants have been unable to provide the names of the employees working at the VA hospital on June 29, 2005.  The nurse who assisted Mrs. Katrensky immediately after her fall was thought to be named "Bobby Walsh".  However, further investigation by the Plaintiffs has revealed his correct name is Bobby Welch and he was recently located in Opelika, Alabama.  His deposition is currently set for July 15, 2010.   The Plaintiffs request leave to amend this response to the Defendant's summary judgment motion after said deposition.

### IV.  CONCLUSION

For the foregoing reasons, this Court should deny the Defendants' motion to dismiss and motion for summary judgment in its entirety.

Respectfully submitted this, the 9th day of July, 2010.

/s/ Nancy M. Kirby            -
Nancy M. Kirby (8686-I64N)
Attorney for Plaintiffs

ADDRESS OF COUNSEL:

| | |
|---|---|
| NANCY M. KIRBY | KAREN S. BENEFIELD, |
| ATORNEY AT LAW | ATTORNEY AT LAW, L.L.C. |
| 141 W. Main Street | 115 W. Broad Street |
| Prattville, AL 36067 | Eufaula, AL 36027 |
| Phone 334.365.2782 | |
| Fax 334.365.1811 | |
| nancykirblaw@bellsouth.net | |

### CERTIFICATE OF SERVICE

  I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Fed. R. Civ. P. (5)(b)(2)(D).  Any other counsel of record will be served by U.S. first class mail on this same date.

                /s/ Nancy M. Kirby     -
                Nancy M. Kirby (8686-I64N)