IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| IRENE & JOHN KATRENSKY, ) | |
| ) | |
|    Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACT. NO.  3:09cv30-CSC |
| ) | (WO) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
|    Defendant. ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiffs Irene and John Katrensky seek compensatory and punitive damages against the defendant United States of America for personal injuries Mrs. Katrensky sustained when she slipped and fell while entering the United States Veterans Hospital in Tuskegee, Alabama.  The plaintiffs allege that the United States, in their operation of the Veterans Hospital, acted negligently and wantonly in failing to maintain its premises in a reasonably safe condition. They further allege that the defendant failed to properly train, inspect or warn the plaintiffs of a dangerous condition.  John Katrensky also brings a loss of consortium claim.

Pursuant to 28 U.S.C. § 2679(d)(1), the United States was substituted as the defendant for the state law tort claims.  Because the United States has been substituted as a party defendant with respect to the tort claims, the Katrenskys' exclusive remedy against the

United States is pursuant to the Federal Tort Claims Act. *See* 28 U.S.C. § 2679.[1] The court has jurisdiction of the plaintiffs' claims pursuant to the jurisdictional grant in 28 U.S.C. § 1346(b). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

This case is now pending before the court on the defendant's motion to dismiss or in the alternative, motion for summary judgment (doc. # 30).[2] The plaintiffs have responded to the defendant's motion (doc. # 38). After carefully reviewing the defendant's motion for summary judgment, the plaintiffs' response to the motion and the supporting and opposing evidentiary materials, the court concludes that the motion is due to be granted.

## II. SUMMARY JUDGMENT STANDARD

Under FED.R.CIV.P. 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[1] Title 28 U.S.C. § 2679(b)(1) provides, in pertinent part, as follows:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee.

[2] Because the motion relies on matters outside the pleadings, the court considers the motion as a motion for summary judgment (doc. # 32).

a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324. If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also* FED.R.CIV.P. 56(e) ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that

---

[3] In *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986), the court stated:

> "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue...Rule 56(e)...requires the nonmoving party to go beyond the pleadings and by...affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial...We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment...Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves. . .

*Id.* at 324.

there is a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995)*; Peppers v. Coates*, 887 F.2d 1493 (11th Cir. 1989). However, *evidence* presented by the non-movant must be believed and all justifiable inferences must be drawn in favor of the non-movant.[4] *Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). With these principles of law in mind, the court will determine now whether summary judgment is appropriate should be granted.

---

[4] "[W]hat is considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

### III. DISCUSSION

### A. FACTS[5]

The facts are simple and undisputed. On June 29, 2005, John Katrenksy had an 8:00 a.m. podiatry appointment at the United States Veterans Hospital in Tuskegee, Alabama. (Dep. John Katrensky at 19, 22). When Irene and John left their house around 5:00 a.m, it was raining. (Dep. Irene Katrensky at 24; Dep. John Katrensky at 20). However, when they arrived at the hospital, it was only misting. (Dep. Irene Katrensky at 24). Irene parked in the side parking lot, and she and John entered the hospital at approximately 7:00 a.m. (*Id*.) There was a mat at the entrance of the hospital. (*Id*. at 27). Irene and John entered the hospital and walked down the hallway to the lobby. (*Id*. at 25). Neither Irene nor John noticed anything on the floor at that time. (Dep. John Katrensky at 26)

Between 8:00 a.m. and 8:15 a.m., Irene left John in the lobby to go to the car to get John a bottle of water. (*Id*. at 26; Dep. John Katrensky at 25). When Irene reentered the hospital, to dry her feet, she dragged them across the mat. (Dep. Irene Katrensky at 27). She took two steps on the mat, and when she stepped off the mat, she slipped and fell on the floor. (*Id*.). According to Irene, she did not see water or any other substance on the floor. (*Id*. at 28).

After she fell, an unknown patient and a staff member helped Irene into a wheelchair, and she was taken to the emergency room. (*Id*. at 13). While Irene did not see any water on

---

[5] Construing the evidence in a light most favorable to the non-movants, the facts are as follows.

the floor before she fell, when she got to the emergency room she realized her pants were wet. (*Id*. at 32-33, 37, 42). X-rays revealed a broken left wrist. (*Id*. at 33).

The plaintiffs filed suit on January 13, 2009.

## B.  FEDERAL TORT CLAIMS ACT and APPLICABLE LAW

The plaintiffs' claims against the United States are barred by the doctrine of sovereign immunity except as to those tort claims for which Congress has waived sovereign immunity and granted consent for the United States to be sued. Under the Federal Tort Claims Act ("FTCA"), Congress waived sovereign immunity and granted consent for the United States to be sued for acts committed by any "employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Consequently, the only claims remaining are those tort claims under the FTCA.

Pursuant to the FTCA, liability is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). *See also Ochran v. United States,* 273 F.3d 1315, 1317 (11th Cir. 2001).

> [T]he FTCA was designed "to provide redress for ordinary torts recognized by state law." *Id.* Indeed, our court has squarely addressed this issue, holding that unless the facts support liability under state law, the district court lacks subject matter jurisdiction to decide an FTCA claim. *Lawrence v. Dunbar,* 919 F.2d 1525, 1528 (11th Cir. 1990) (per curiam).

*Ochran*, 273 F.3d at 1317. Thus, Alabama tort law applies. *See Stone v. United States*, 373 F.3d 1129, 1130 (11th Cir. 2004).

## D. THE LAW OF PREMISES LIABILITY

It is undisputed that Irene was an invitee of the defendant. Thus, the defendant owed Irene, "a duty to exercise ordinary and reasonable care to keep the premises in a reasonably safe condition." *Perry v. Macon Cnty Greyhound Park, Inc.*, 514 So. 2d 1280, 1281 (Ala. 1987). *See also Terrell v. Warehouse Groceries*, 364 So. 2d 675, 675 (Ala. 1978). "The owner of the premises, however, is *not* an insurer of the safety of his invitees, and the fact that the plaintiff fell and was injured raises no presumption of negligence." *Perry*, 514 So. 2d at 1281. *See also Greer v. Eye Foundation, Inc.*, 237 So. 2d 456, 459 (Ala. 1970); *Riverview Reg.'l Met. Ctr., Inc. v. Williams*, 667 So. 2d 46, 48 (Ala. 1995); *Brown v. Autry Greer & Sons, Inc.*, 551 So. 2d 1049, 1050 (Ala. 1989). The plaintiffs bear the burden of "proving that the defendant breached its duty to exercise ordinary and reasonable care and failed to keep its premises in a reasonably good condition." *Greer*, 237 So. 2d at 459.

Alabama law is well established that rain water cases are unequivocally distinct from other slip and fall cases. *See Gulas v. Ratliff*, 216 So. 2d 278, 281 (Ala. 1968) ("A fall caused by snow or rain is distinguishable from a fall resulting from some other object as is usual in a slip and fall case."); *Terrell*, 364 So. 2d at 677; *Wal-Mart Stores, Inc. v. White*, 476 So. 2d 614, 616 (Ala. 1985).

> The law in a case like this has long been settled. The plaintiff was a business invitee of the defendants and, as such, the defendants have the duty of exercising ordinary and reasonable care to keep the premises in a reasonably safe condition. This does not require a storekeeper to keep a floor completely dry during rainstorms. *Terrell v. Warehouse Groceries*, 364 So. 2d 675 (Ala. 1978).

*McDonald's Corp. v. Grissom*, 402 So. 2d 953, 955 (Ala. 1981).

The parties assume that the foreign substance at issue in this case was tracked-in rain water.[6] No allegation is made or evidence presented which suggests that the floor at the entrance to the hospital was defectively designed, constructed, or installed. The dispositive issue in this case is whether the United States breached its duty to exercise reasonable care to maintain the entryway of the hospital in a reasonably safe condition. The United States owed Mrs. Katrensky, as an invitee, a duty to exercise reasonable care to maintain its premises in a reasonably safe condition.

> [A]lthough a storekeeper owes a customer a duty to exercise reasonable care to maintain the premises in a safe condition, where the foreign substance is rainwater tracked in by customers and in the absence of unusual accumulation, due care does not require that a storekeeper keep a floor completely dry during a rainstorm or to hold him responsible for every slick place due to tracked-in rainwater would impose an unreasonable standard of care, and would, in effect, make him an insurer of the customer's safety. Of course, each case must be examined in light of its particular circumstances, and where there are unusual accumulations of rain water or other circumstances, due care may require that the storekeeper take affirmative measures such as mopping, applying anti-slip compounds, or posting warnings.

*Terrell*, 364 So. 2d at 677. The Alabama Supreme Court has repeatedly held that a reasonable person knows, or should know, that rain water causes surfaces to become slick, and thus, premise owners are generally not liable for slippery conditions caused by rain water. *See Ex parte Neese*, 819 So. 2d 584, 590 (Ala. Oct. 26, 2001) (location of door mat coupled with being wet from the rain was obvious to the plaintiff); *Shelton v. Boston Fin.,*

---

[6] The only evidence of the nature of the offending substance is Irene's testimony that when she was in the emergency room, she noticed her pants were wet. (Dep. Irene Katrensky at 32, 37, & 42).

*Inc.*, 638 So.2d 824, 825 (Ala. 1994) (reasonable person would be expected to realize that rain would cause grass to become slippery); *Hines v. Hardy*, 567 So. 2d 1283, 1284 (Ala. 1990) (plaintiff knew crosstie was wet from rain and thus, as a matter of law, was on notice of the slippery condition); *Lawson v. Williams*, 514 So. 2d 882, 883 (Ala. 1987) (plaintiff should have known that leaves accumulated after rain would probably be wet and slippery).[7]

In opposition to the motion for summary judgment, the plaintiffs assert that '[o]nce an unusual accumulation of rainwater is established by substantial evidence, the defendant must show that he exercised due care in taking measures to prevent accidents due to the unusual accumulation of rainwater." (Pls' Br. at 7). They assume summary judgment is inappropriate because there is a genuine issue of fact about what constitutes an 'unusual accumulation' of water. However, assertions and assumptions of counsel are not evidence. The mere fact that there may have been water on the floor is insufficient to create a genuine issue of fact. "[W]hen weather creates a natural hazard of this sort, a person of ordinary care is not required to keep a floor in a public place completely free of snow or water." *Terrell*, 364 So. 2d at 677. *Cf, Perry*, 514 So. 2d at 1282. For the same reason, the fact that Mrs. Katrensky's pants were wet does not create a genuine issue of fact thereby precluding summary judgment. *See Greer*, *supra* (fact that uniform was wet from hips to shoulder was not enough to survive summary judgment). Even assuming that the substance on the floor

---

[7] The Alabama Supreme Court recognizes that in other contexts rain creates conditions which an average person is expected to know may constitute a hazard. *See Shelton v. Boston Fin., Inc.*, 638 So.2d 824 (Ala. 1994) (A reasonable person knows that rain falling on grass causes it to be wet and that a slope covered by wet grass would naturally be slippery).

9

was water, there is no evidence that there was an unusual accumulation of water. As explained elsewhere in this opinion, the Alabama courts have consistently recognized the obvious fact that at an entrance to a building on a rainy day water will be present.

A party opposing a motion for summary judgment must submit affirmative evidence demonstrating an genuine issue of material fact on an essential element of her claim. *Celotex,* 477 U.S. at 322. The plaintiffs argue that the question of what constitutes an "unusual accumulation" of water is a question for the jury. (Pls' Br. at 6). For that proposition, they rely on *Boyd v. Wal-Mart Stores, Inc.*, 710 So. 2d 1258 (Ala. Civ. App. 1997). In *Boyd*, a customer fell when he slipped on water which had accumulated at a service desk located inside the store.

> In his deposition, Boyd said that he would consider the amount of water on the floor at Wal-Mart the day he fell to be unusual. Evidence also tends to show not only that water was in the doorway, where one would expect the floor to be wet on a rainy day, but that the floor was wet even in the area around the service desk. What constitutes an "unusual" accumulation of water is a fact question that should be answered by the jury. Boyd presented substantial evidence to create a question whether there was an unusual accumulation of rainwater on the floor.

*Id.* at 1260.

Two observations about *Boyd* are appropriate. While *Boyd* may be instructive, it is not binding on this court because it is a decision of an intermediate Alabama appellate court.[8]

---

[8] Of course, where a state's highest court has not spoken to an issue, a federal court is required to follow intermediate state court decisions absent some clear indication the state's highest court would rule otherwise. *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983). Here, however, the Alabama Supreme Court has spoken to the question of "unusual accumulations" of rainwater.

Second, and more importantly, *Boyd* itself draws an important distinction about the impact of the location of the rainwater because it notes the expectation that, on a rainy day, entrance areas will be wet. The offending water in *Boyd* was not located at the store entrance. Thus, the *Boyd* court's statement that what constitutes an "unusual accumulation" is a jury question cannot be generalized to situations involving accumulations of rainwater at a store entrance.

However, the court's conclusions about *Boyd's* applicability do not end the enquiry. In *King v. Winn-Dixie of Montgomery, Inc.*, 565 So. 2d 12 (Ala. 1990), Alabama's highest court concluded that evidence of rainwater on the floor at a store entrance was sufficient to create a question for a jury. In *Strahsburg v. Winn Dixie Montgomery, Inc.*, 601 So. 2d 916 (Ala. 1992), the court considered a rainy day fall near shopping carts at the front of the store. The plaintiff had just checked out and fell after returning his shopping cart to the front of the store. The Alabama Supreme Court concluded that the trial court erred in directing a verdict in favor of the defendant.

> In the present case, Strahsburg testified, "[T]here was a lot of water on the floor because my pants were, if you want to say, close to sopping wet. I had blue jeans on and they were very wet." Although there was testimony from the store manager and the bagger that the floors were mopped as often as possible and that the warning signs were in place when Strahsburg fell, he testified that he did not see any warning signs in the area where he fell. The testimony from Strahsburg regarding the amount of water on the floor and his testimony that he did not see any warning signs posted created factual questions as to whether Winn-Dixie breached its duty of care to Strahsburg.

*Id.* at 919.

*Boyd* and *Strahsburg* are difficult to reconcile with other Alabama cases. In *Cox v.*

*Goldstein*, 53 So. 2d 354 (Ala. 1951), the plaintiff fell at the entrance to a store.

> 'About the middle of the afternoon on New Year's Eve, 1947, the plaintiff, a widow of middle age, accompanied by another lady, entered the outer lobby or vestibule of the defendants' ladies' ready-to-wear store in Birmingham for the purpose of purchasing a dress. It was raining at the time and had been raining since 11:42 in the morning, the rainfall being described as from 'light' to 'moderate'. The plaintiff was wearing shoes with leather soles and medium heels. 'After traversing a few steps into the entrance-way, the plaintiff's feet slipped forward and out from under her, and she fell upon the floor of the vestibule in a sitting position. When she arose from her fall her hose and clothing were found to be wet and muddy.

*Id.* at 355.

The *Cox* court found that this evidence, including testimony that the plaintiff had "muddy water all on the side of her skirt" and that it was "awfully wet" was held to be insufficient to create a genuine issue about the store's negligence. In *Gulas v. Ratliff*, *supra*, the plaintiff entered the restaurant on a snowy and icy day and fell "after taking just a couple of steps inside . . ." The court ruled for the defendant concluding that there was no evidence of an unusual accumulation of snow. In *Wal-Mart Stores, Inc. v. White*, *supra*, a customer entered the store on a rainy day, slipped and fell, breaking her left leg. Relying on *Cox*, *Gulas*, and *Terrell*, the court held that where the evidence showed only that the floor was just wet enough to be "slick," there was not sufficient evidence to create a genuine issue about an unusual accumulation even though the evidence also indicated that the plaintiff's clothes were wet when she got home. *Id.* at 616-17.

The only evidence before the court is Irene Katrensky's testimony that before she fell, she did not see anything, including water, on the floor, but after the fall her pants were "wet."

12

As *Terrell, supra*, makes clear, it is the plaintiffs' burden to show that an "unusual accumulation" of rainwater or other circumstances existed. The evidence which was submitted by the plaintiffs does not create a genuine issue about the existence of an unusual accumulation of water.

In view of the seemingly conflicting precedents, it is the duty of this court to predict how the Alabama Supreme Court would rule on this question. *See Crowe v. Coleman*, 113 F.3d 1536, 1540 (11th Cir. 1997). After careful consideration of the issue presented and a close review of binding Alabama precedent, the court concludes that the plaintiffs are required but have failed to demonstrate a genuine issue of material fact about whether there was an "unusual accumulation" of rain water or the existence of other circumstances in this case. Therefore, summary judgment is appropriate because "absent an unusual accumulation or 'other circumstances,' the presence of rainwater on a floor is not a breach of due care." *White*, 476 So. 2d at 618.

The plaintiffs also argue that the defendant breached its duty of due care to them because there is no evidence that the hospital took any affirmative measures under the circumstances. This argument is unavailing. Even if the court were to assume that the plaintiffs had established that there was an unusual accumulation of rain water, the hospital was not duty bound to take affirmative measures. "[W]here there are unusual accumulations of rain water or other circumstances, due care *may* require that the shopkeeper take affirmative measures such as mopping, applying anti-slip compounds *or* posting warnings."

*Terrell*, 364 So. 2d at 677 (emphasis added). More importantly, however, it is undisputed that the hospital had taken an affirmative action by placing a door mat at the entryway.[9] Thus, the court concludes that Mrs. Katrensky has failed to establish that a genuine issue of fact exists regarding whether the United States breached its duty to keep its hospital in a reasonably safe condition.

> It is not the duty of persons in control of such passageways to keep a force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas, for several obvious reasons unnecessary to mention in detail. There is no evidence in this case that [defendant] did anything or omitted to do anything which storekeepers, of ordinary care and prudence, under similar circumstances, do or omit to do for the protection of their patrons.

*Cox,* 53 So. 2d at 357; *Terrell*, 364 So. 2d at 676.

Finally, an invitor generally will not be liable to an invitee for any injuries caused by a danger or condition which was known or should have been known to the invitee in the exercise of reasonable care. *Knight v. Seale*, 530 So. 2d 821, 832 (Ala. 1988).

> Whether we speak in terms of the duty owed by the defendant . . ., the plaintiff cannot recover for negligence or wantonness if the plaintiff's injury was caused by an open and obvious danger of which the plaintiff knew, or should have been aware. However, not only must the plaintiff have knowledge of the dangerous condition, but the plaintiff also must have a conscious appreciation of the danger posed by the visible condition at the moment the incident

---

[9] Mrs. Katrensky acknowledged that it had been raining and she wiped her feet on the mat because it had been raining. (Dep. Irene Katrensky at 27). "The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls and the like in that they *are not known to the invitee, and would not be observed by [her] in the exercise of ordinary care.*" *Harding v. Pierce Hardy Real Estate*, 628 So. 2d 461, 463 (Ala. 1993) (emphasis in original). Because the plaintiff was aware of the condition caused by the rain, the court concludes that the defendant did not create a trap.

occurred.

*Marquis v. Marquis*, 480 So. 2d 1213, 1215 (Ala. 1985)

Although the question of the plaintiff's appreciation of the danger is "almost always" a jury question, there are instances "where the facts are such that all reasonable men must reach the same conclusion." *See Knight*, 530 So. 2d at 824. Mrs. Katrensky was aware of the wet condition caused by the rain. She testified that it had been raining and she dragged her feet across the mat when she entered the hospital because she knew her feet were wet, and she had to be careful. (Dep. Irene Katrensky at 27 & 41). Thus, she was aware of and as a matter of law must have appreciated the danger created by the rain as evidenced by the fact that she wiped her feet on the mat when she entered the hospital. *See Boyd v. Sears Roebuck & Co.*, 642 So. 2d 949, 950 (Ala. 1994) (plaintiff's admission that she attempted to avoid the oil spot is evidence that, as a matter of law, she appreciated the danger caused by the oil). Thus, because the condition of the floor was open and obvious, the United States is entitled to judgment as a matter of law. *Id.*

### E. WANTONNESS UNDER ALABAMA LAW

To be liable for wantonness under Alabama law, the defendant must act "with a reckless or conscious disregard of the rights or safety of others." *Boyd,* 642 So. 2d at 950-51. The Alabama Supreme Court holds that wantonness and negligence are independent causes of action and emphasizes that wantonness is not simply a higher degree of culpability than negligence. *See e.g., Ex parte Anderson*, 682 So. 2d 467 (Ala. 1996). In *Anderson,* the

Alabama Supreme Court explained that

> Implicit in wanton, willful, or reckless misconduct is an action, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury . . . . Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act which cannot exist without a purpose or design, a conscious or intentional act. [W]anton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted.

*Id.* at 470 (citing *Ex parte McNeil,* 63 So. 992 (Ala. 1913)).

In response to the defendant's motion for summary judgment, the plaintiffs have failed to state with any coherent degree of specificity why the motion should be denied on this claim. The plaintiffs' argument in opposition to the motion for summary judgment on their wantonness claim, in its entirety, is as follows:

> The Plaintiffs contend that the employees' failure to comply with the VA's written policies and procedures set out for the stated purpose of maintaining a safe environment, despite training to the contrary, demonstrates a wanton disregard for the patrons, and establishes wanton conduct for which the Plaintiffs are entitled to relief. The employees knew of the risk of injury to foreseeable plaintiffs, and their reckless disregard for their duties during rainy weather constitutes wantonness.

(Pls' Br. at 10). The onus is on the party opposing summary judgment to submit affirmative evidence demonstrating that there exists a genuine issue of material fact regarding an essential element of the claim. *Celotex,* 477 U.S. at 322. The court is not required to distill every potential argument that could be made based upon the materials before it on summary judgment. *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990).

More importantly, however, the court's independent evaluation of the record

16

demonstrates that it is devoid of any evidence that the hospital acted wantonly. The plaintiffs have not presented the court with any evidence about the state of mind of any hospital employee or any argument suggesting that the hospital's failure to discover, remove or do something about the tracked-in rain water is evidence of wanton conduct.[10] Evidence that an accident occurred, without evidence that the defendant or its agents were conscious of the plaintiff's injury or the potential for injury, is insufficient to prove wantonness under Alabama law. Consequently, the court concludes that the United States' motion for summary judgment on the plaintiffs' wantonness claim is due to be granted.

## F.  NEGLIGENT TRAINING AND SUPERVISION CLAIM

The plaintiffs allege that the defendant was negligent in the supervision and training of staff.

> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon it being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence.

---

[10] The plaintiffs suggest that "the Defendants have failed to demonstrate that the VA hospital followed its own policies or procedures with respect to maintaining a safe environment for its patrons. There is no evidence that safety rounds or routine inspections were conducted by housekeeping aids or supervisor (sic) as prescribed by policy." (Pls' Br. at 9). First, as previously discussed, under Alabama law, rain water cases are treated differently from other slip and fall cases. *See Gulas v. Ratliff*, 216 So. 2d 278 (Ala. 1968); *Terrell v. Warehouse Groceries,* 364 So. 2d 675 (Ala. 1978); *Wal-Mart Stores, Inc. v. White*, 476 So. 2d 614 (Ala. 1985). Next, this argument turns the summary judgment standard on its head. It is the plaintiffs' burden to present affirmative evidence that the defendant acted wantonly under the circumstances. There is no express or implied requirement in FED.R.CIV.P. 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Thus, the defendant has no duty to demonstrate the lack of wantonness.

*Potts v. BE & K Constr. Co.*, 604 So. 2d 398, 400 (Ala. 1992).

Although the plaintiffs responded to the defendants' motion for summary judgment, their supporting brief does not refer the court to any evidence or legal authority with respect to this claim. Their entire argument is "[a]t a minimum, the Defendants (sic) actions, or failure to ensure compliance with policies and procedures amounted to negligent training and supervision." (Pls' Br. at 10). The plaintiffs have alleged no facts that would indicate the defendant had knowledge of any tortious conduct on the part of its employees. Moreover, the plaintiffs have alleged no facts from which the court could conclude any underlying tortious conduct had been committed by any agent of the defendant. *See Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820 (Ala. 1999). Finally, the plaintiffs' failure to substantively address their negligent training and supervision claim acts as a concession that this claim does not survive the motion for summary judgment. The burden is on the parties to formulate arguments and grounds alleged in the complaint but not relied upon in responding to a motion for summary judgment are deemed abandoned. *See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994). Accordingly, the court concludes that the defendant's motion for summary judgment on this claim is due to be granted.

## G. LOSS OF CONSORTIUM CLAIM

Alabama law defines consortium as the "conjugal fellowship of husband and wife, and the right of [husband and wife] to the company, society, cooperation, affection, and aid of

the other in every conjugal relation." *Hinson v. King*, 603 So. 2d 1104, 1106 (Ala. Civ. App. 1992). Under Alabama law, a loss of consortium claim is derivative of the claims of an injured spouse. *See Ex parte N.P.*, 676 So. 2d 928, 930 (Ala. 1996); *Mattison v. Kirk*, 497 So. 2d 120, 123 (Ala. 1986), *overruled on other grounds, King v. Nat'l Spa and Pool Inst., Inc.*, 607 So. 2d 1241 (Ala. 1992). Consequently, to recover on a loss of consortium claim, the plaintiff must prove that the spouse's injury was caused by the defendant's wrongful acts and that, as a result, the plaintiff was injured. *Ex parte N.P.*, 676 So. 2d at 930 . Because Mrs.Katrensky's negligence claim does not survive summary judgment, neither does Mr. Katrensky's loss of consortium claim. Therefore, the United States' motion for summary judgment on this claim is due to be granted.

## IV.  CONCLUSION

For the reasons as stated, the court concludes that the United States's motion for summary judgment is due to be granted and this case is due to be dismissed.

A separate order will be entered.

Done this 23rd day of July, 2010.

                                /s/Charles S. Coody
                                CHARLES S. COODY
                                UNITED STATES MAGISTRATE JUDGE